Good morning, Your Honors. My name is Vicki Dobrin and I represent the petitioner Mr. Gomez. I'd like to reserve five minutes for rebuttal. Mr. Gomez was a lawful permanent resident who was deported to Nicaragua based solely on a state conviction that was subsequently vacated on constitutional grounds. Within 90 days of that order from the state court, he filed a motion to reopen at the Board of Immigration Appeals. He was in Nicaragua at the time and he still is to this day. He argued that based on the vacated conviction, the board should reopen. And he also argued that the filing deadline for the motion should be equitably tolled. He alternatively asked the board to reopen sui sponte for similar reasons. In denying the motion, the board said the motion was untimely. But it didn't address, much less even mention, his equitable tolling argument. May I interrupt you there? Sure. You used the word that he was deported. Are you referring to the reinstatement at this time? The first, the underlying deportation, Your Honor. Okay. And so the board didn't address his tolling argument in denying the motion to reopen. And then as to the sui sponte request, the alternative request, it found without any analysis at all that 8 U.S.C. section 1231A5 bars reopening. Because he had reentered. Because he had been reinstated. Right. So here's my question. In the abstract, it seems totally fair to me that he ought to get one shot now that he's had his state conviction vacated. But the question or the issue I'm having is how to fit that in the statute. And that's really what we want to talk with you about today. Because we do know the background. Right. So we have this older case, Alvarenga v. Aguilobos. And there it's basically been said that the reinstatement statute bars review either collaterally or directly. And, of course, we have a question as well, even though we didn't address that issue in our embank case later, the Morales v. Squierda, did we somehow implicitly overrule that? Or is there some other authority that you rely on that would permit him to go back now and challenge that original removal order? And I had a feeling you might ask me about that case, even though the government has not raised that case to challenge our position. I understand. But we're going to look at the landscape. Yes, I understand. So, I mean, I guess the first response is to the extent that that case is inconsistent with Morales v. Squierda, it's been overruled, that aspect of the case. One question I have about that is usually in the embank process, if we really overrule a case, we say it. And so... Well, in Morales v. Squierda, the court had to address whether the reinstatement process was constitutional. And so in finding that the regulation was constitutional, there were no constitutional issues with it, the court had to define the scope of 1231A5. And so in doing that, it specifically found that the bar to reopening is only applicable during the reinstatement process. It said that repeatedly in its decision. And it was central to the court's holding in Morales v. Squierda because the petitioner was challenging the constitutionality of the reinstatement process as a whole. And so at several points, the court went out of its way to make clear, you cannot challenge an underlying order solely during the reinstatement process in an effort to challenge reinstatement. And so to the extent that Villalobos is inconsistent with that, I would say it's no longer good law on that point. So I want to try to understand then the statute and why we have it. One argument would be, well, while you're in the country now that you've gotten here illegally, according, you've reentered, you're in the country. You shouldn't be able to leverage being in by getting another proceeding. So that's one argument. So I guess your point would be that once he leaves again, the reinstatement basically evaporates because the removal order has been executed? Well, essentially, yes. I mean, he's no longer in the reinstatement process. And so kind of the point behind 1231A5 was to have some finality so that you couldn't reattack an underlying order while you were being reinstated. That doesn't mean that if there's some other basis to challenge your order by way of a motion to reopen that you can't do it. They didn't want people to be able to return to the United States, get placed in the reinstatement process, and then have, by virtue of being in the reinstatement process, get another shot to challenge their underlying order. Whereas someone who stayed out of the country and didn't return and wasn't in the reinstatement process didn't get to challenge the underlying order in that way. And that's why the court said you can't manufacture yourself this new opportunity. But that's not at all what happened in this case. Mr. Gomez, the fact that he was reinstated has nothing to do whatsoever with the motion to reopen that he filed. He didn't benefit or use the reinstatement process in any way to help him or to seek the reopening of his underlying case. And so that's why the concerns with what the point is of 1231A5 don't apply at all to him. And, in fact, the court in Morales v. Squierdo specifically addressed this very issue because the petitioner argued in the reinstatement process, well, you can't reinstate my prior order because the underlying order was defective. And they said, well, during the reinstatement process, you can't make that challenge. But if you have a valid basis to reopen, they specifically cited to the regulations and the statute governing a motion to reopen, then you can pursue it after you leave. So let's just say he had not come back, but he was at home in Nicaragua. And finally, he got a competent attorney to do what they did to basically vacate his conviction. He would then just file a motion to reopen, being outside the country, correct? Right. And then at that point, would equitable tolling and all that kick in and analyze the motion to reopen? Yes, that would kick in under that scenario, and it kicks in under our scenario. Regardless of the reinstatement, we laid out all of the reasons why the deadline to file should be told. It should be told regardless of whether he was reinstated or not. Now, if he were here in the reinstatement process, then certainly he couldn't seek to challenge reinstatement by filing the motion at that point. But that's not what happened. So let's say that he had a right to at least his one motion to reopen, and you were placed into that posture. Then the immigration authorities would consider the timeliness, and then all of that would be considered, right? I mean, he wouldn't automatically get a motion. Would he automatically get it? He wouldn't automatically get it, right. He would still have to show either that the deadline should be equitably told, or alternatively that this was a circumstance that warranted sua sponte reopening. And in our brief, we cited, I think it's a Third Circuit case, that listed a number of unpublished cases by the Board of Immigration Appeals in which it did sua sponte reopen. Years later, where an underlying conviction had been vacated. So if you were permitted the opportunity to file the motion to reopen, what would be the next procedural thing that would happen, and where would that happen? So if you're permitted to file it, or if they found that they could potentially reopen, then you would wait for a decision. So we're asking the court to put him in that place, to find that the reinstatement bar to reopening doesn't apply in this case, and remand to the board for it to consider the tolling argument that it never considered, and to alternatively look at whether sua sponte reopening would be justified. Because the board can sua sponte reopen at any time. It doesn't have to consider tolling or anything else. It can just determine, is this an exceptional situation here? That justifies reopening on our own motion. And it routinely reopens years after the fact on its own motion, after a request for it to exercise sua sponte reopening in similar situations. Do we have anything other than that Seventh Circuit case, or anything in the board that shows us someone in his position that got to be placed back in the reopening arena? In his position, somebody who was reinstated? Yeah, reinstated and then deported. I don't have a personal example of it. I mean, I can just say, having spoken to colleagues of mine, they have been successful in getting underlying orders reopened. So I don't think that this is, you know, the decision in this case isn't what the board has always done. So, you know, I guess, if I answer your concerns on that point, I guess I just want to go back again to Morales-Escuero, because the government argues that Morales-Escuero doesn't limit the reinstatement bar just to the reinstatement period. But that's clearly not accurate. That's not what the board, I mean, that's not what the Ninth Circuit did at all. And there are several points at which it's not accurate. It says that that's the only period in which that bar applies. And the government also says that the Ninth Circuit said that you have relief, but you can only seek it prior to the reinstatement. And, again, that's not what the Ninth Circuit said. So the petitioner, he challenged the reinstatement regulations and, you know, argued that the underlying order was defective. And the court said, well, we can't consider that because you're arguing that in the context of your reinstatement process. So let me understand how that would work if they say, well, you can only challenge it prior to reinstatement. Are they saying even though you reentered the country, you could challenge it before they started reinstatement? Presumably you could, because, I mean, at least under the government's interpretation, if you're not reinstated, then you can file a motion to reopen, whether it will be granted or not is another story. But the Ninth Circuit did not limit this or say it had to be done prior to the reinstatement. And, in fact, it said the petitioner in this case, it told him that he could do the exact opposite, that after this reinstatement process was over, if he had a valid basis to challenge the underlying order, he could do it when he left. And they specifically cited the reopening provisions. And that's exactly what Mr. Gomez did. After he was reinstated, he was back in Nicaragua, and his conviction was subsequently set aside on constitutional grounds, and then he sought to reopen. This court, in a number of earlier cases that we cited in our briefs, has consistently found that where a conviction underlying a deportation has subsequently been set aside or vacated on some sort of constitutional or substantive ground, that the original deportation wasn't validly executed and that reopening is warranted. And so this is the exact situation that we have in this case. I think if the court has no further questions... No, you want to reserve the remaining time? Sure. Thank you. Thank you. Thank you. Excuse me. May it please the Court, Tim Remnitz on behalf of the United States Attorney General Jefferson B. Sessions III. This immigration case, Petitioner Mr. Gomez challenges a 2014 decision of the Board which denied reopening his 1998 deportation order. The Board found it was prohibited from reopening by virtue of the reinstatement statute 1231A5. Petitioner challenges the Board's decision, stating that it's contrary to the plain language of the statute and contrary to this Court's decision in Morales v. Securito. However, the plain language of the statute absolutely bars motions to reopen. And in fact, that is consistent with Congressional intent in passing the reinstatement statute and consistent with this Court's decision in Morales v. Securito. So starting with the plain language of the statute, there are no restrictions in the statute for qualifying language. It says, if the Attorney General finds New England has reentered the United States illegally after having been removed under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, and there should be no relief. There's no restrictions, temporally, on this reinstatement statute. There's no qualifying language. Also, it uses the word... So it's an absolute bar. It's an absolute bar. In the government's mind. Yes. Even if he was tortured. Tortured? Tortured. No, in that case... To plead guilty to a criminal offense he never committed. Well, if he's making a torture claim... No, I'm just... You know, it's a hypothetical. We get to ask questions like that to test the underpinnings of the government's position. What if he was pled guilty to a crime he never committed and the reason he pled guilty is because of provable application of torture? Yes, so... Still an absolute bar? Absolute bar. Because... So the underlying rule of order is defective, constitutionally. The government doesn't challenge that. That was exactly what was happening in Morales Esquerdo as well. It was an underlying defective removal order. They claimed lack of notice in that case. And the Environment Court did not question that. What it was saying is that reinstatement does not penalize you for that. It does not diminish the rights and remedies that you had prior to reinstatement. So in this hypothetical, if someone was tortured, and it's mainly about whether or not it was a constitutionally defective criminal conviction, you had these remedies available to you for years, in Mr. Gomez's case for 14 years, to pursue these remedies. And he did not until he legally reentered the United States and with the assistance of the federal public defender who was assigned to him by virtue of his criminal illegal reentry proceedings. Now, wait just a second. You say he had this open for all these years. When was the conviction vacated? In 2014, I believe. Okay. So could he have done anything before that? It seems he could have, yes. What? File a motion to vacate years before. I'd like to vacate... Well, he... That has to do with the state process. But within the immigration process, until he has a vacated conviction, he has nothing to reopen, right? Correct. So, I mean, I don't think it's fair to say that he sat on his rights for all these years and then magically popped up. I mean, it's a miracle, as you know, to get your conviction vacated. So that seems to me to be an unfair characterization. How long after he learned that his conviction was vacated did he file for immigration relief? Within 90 days. However, the 90-day bar is from the board's decision. A motion to reopen has to be filed within 90 days of the last order of removal. Of course. But he didn't have anything to file on. So the 90 days then kicks in to see, well, maybe this is a case where equitable tolling would be appropriate. Maybe not. Perhaps. These are all arguments on the merits. And, well, for example, Wyatt Vidersberg, the case that's been cited by the parties from 1990 of this Court, that was an individual who was removed from the United States, an Austrian individual, and he pursued his motion to vacate from abroad. And the government at that time was making the argument that he lacked diligence because it took so long for him to successfully vacate his conviction. But he managed to do so before, and he never illegally reentered the United States. So that's what the government is saying here, that during this time, this 14 years, despite the fact that he didn't do anything to affirmably vacate his conviction, he could have, just like Mr. Vidersberg in that case. How do you deal with this language from Morales? The only effect of the reinstatement order is to cause Morales' removal, thus denying him any benefit from his latest violation of U.S. law, committed when he reentered the United States without the Attorney General's permission. Then the Court goes on to say, the reinstatement order imposes no civil or criminal penalties, creates no new obstacles to attacking the validity of the removal order, and does not diminish the petitioner's access to whatever path for lawful entry into the United States might otherwise be available to him under the immigration laws. That's at page 498. How do you deal with that? Well, what that Court is saying, first of all, Morales Esquerra was— How do you deal with that language? So that language, in the government's point of view, is talking about the rights and remedies available to someone before reinstatement. So reinstatement's not— Does it say that? Yes. It's not saying it's a penalty, right? It doesn't diminish your rights and remedies available to you prior to reinstatement. But all reinstatement is saying is that you forfeit your right to file for further relief, your right to file a motion to reopen. And you had all these— Morales Esquerra's talking about, in the government's point of view, is that the rights and remedies which are extensively available to you prior to reinstatement, but then you have illegally reentered after being removed, at that point you have forfeited this process that you had available to you. Does it make any difference at all to the government that before his deportation, now called removal based on a now-vacated criminal conviction, that he was a green card holder? Well, no, it does not make a difference to the government. At this point, it's an absolute bar. I mean, we're not challenging the fact that it was a constitutionally defective underlying order at this point. And that's the same as in Morales Esquerra. There was a defective underlying removal order. But that's why it's consistent with Morales Esquerra to apply this bar absolutely, because Morales Esquerra explains that you had extensive process available to you prior to your choice to illegally reenter the United States. In this case—and they say that language, there's other language, which says it creates no new obstacles, and especially parses out someone who lawfully remains outside the United States after deportation. And they pursue their rights from there versus someone who doesn't. And the language goes on further and says once you've illegally reentered, and you've manufactured a new opportunity for yourself to challenge a removal order, that's not required by due process. And that's what the reinstatement statute simply does. It's saying at some point there's these interests in finality and consequence. The interest of finality was explained in Fernandez v. Vargas, the United States Supreme Court addressing the retroactivity of the new reinstatement statute. It said it was passed to bring some finality to immigration proceedings, not to allow endless motions to reopen. And also Petitioner 28J, Mejia v. Sessions, the Fourth Circuit case which was addressing whether asylum is available in reinstatement. And they note the House Conference Report from ERIRA, which enacted the current version of this statute, noted that they also wanted to impose some sort of consequences on someone who continually reenters the United States in violation of United States law. And the Court pointed out its early decision in Alibrenga v. Villalobos, which notes the same thing, that Congress can rationally draw these distinctions between people that stay outside the United States lawfully and pursue their remedies from there, versus those that then legally reenter and take it upon themselves to execute self-help that way. Is your opposing counsel correct when she says that the BIA did not address the bar? The reinstatement bar? Yeah. No, I think the board is saying we are prohibited from reopening because it's clear in the statute it says no reopening. I thought it was based on timeliness. No, they're saying they cite the reinstatement statute and say we're prohibited from reopening. They don't get into timeliness. They don't get into equitable tolling, because at this point that's the finality and consequences that the reinstatement bar imposes. And that's what the Seventh Circuit concluded in Cordova v. Soto, too, that if you look at it from another way, if you accept Petitioner's argument that the bar motions to reopen applies only in the very brief period of reinstatement, and that's a very ministerial task, as the Court explained in Morales v. Sciordo. It's only a three-part inquiry. Who are you? Were you previously removed? And did you legally reenter? And that's why the Morales v. Sciordo Court upheld the fact that an immigration official rather than an immigration judge can perform that activity, because there's no more process due at that point. You're not determining removability anymore. You're not determining relief, on the other hand, which can take years in front of an immigration judge. At this point, it's a very ministerial task, and that comports with the Congressional intent of the reinstatement statute. There's no more determinations of relief. There's no more determinations of removability. You've had your day in court. You had proceedings. In this case, you had 14 years to do something about it, and you did not. Why is it inconsistent to say with what you're just saying that once the person, the removal order, has been reinstated, he's back in the country of origin, that, in fact, he has the chance to reopen? Why is what you're saying inconsistent with that and the reading of the statute? I was, Your Honor, asking after an executed reinstatement order? The facts that we have here. Yes, and it's consistent in the fact that as soon as the reinstatement occurred and he was removed, there's no more remedies available to him. But isn't there a one reading of the statute that you could say that the right not to apply for asylum, the right not to reopen the original order, would only apply in that process of reinstatement? That's the petitioner's argument, and if I can go a little further with the point I was trying to make a minute ago. If you accept that argument and this whole point about the reinstatement statute is finality and consequence, and it's only in that very abbreviated setting, that three-part inquiry, that they can't reopen and they can't seek relief, then the very next day after the removal, accepting the petitioner's argument, they can seek reopening. They can seek relief. So it would investigate and nullify the reinstatement statute. All this interest in finality, it would evaporate, as the panel used that word previously, because there's no more finality anymore. There's boundless period after that reinstatement where they can just file motions to reopen then. And by that reasoning, why couldn't they also file for relief? The statute also clearly bars all relief, but if this only applies in the very limited reinstatement setting, then why not the day after it gets removed? He can file any kind of application for relief he wants. He can file any kind of motion to reopen he wants. Well, yes, that is a question for Petitioner. The reinstatement order doesn't actually mean that you leave that day, right? Not necessarily. Not necessarily. So you might even be in the United States for a period longer. Perhaps. Usually in a reinstatement, you're in detention. But I guess the . . . Well, because he said the illegal entry. But then the question is, the reinstatement order does evaporate once you leave, in effect. In other words, once you have a reinstatement order and you get deported, you're no longer in reinstatement proceedings, correct? Correct. So now you're outside the country. Yes. And counsel has said there are occasions where the board has considered people in that situation. So my question is, have you had a mediation in this case? No, there's been no mediation in this case. The only reason I ask is that simply putting him in the ability to file a motion for reopen doesn't mean he's going to win, because then the government could make all those arguments you're making, which is you waited too long, this isn't exceptional. So I'm just curious about why the government is fighting so hard, because you might get a decision that would apply not just to Mr. Gomez, but to everybody. You might get an adverse decision. So have you considered that? We have. I assume you'd be amenable to at least considering mediation. We could consider mediation, but we also litigated this issue in the Seventh Circuit as well. I understand. So we believe this is the right result that this bar implies indefinitely. The board's hands are essentially tied then, because the board is prohibited by Congress from reopening at this point. So the board can't sui sponte reopen. Even if there was equities presented to it, the board's position is it's prohibited by Congress from reopening for individuals that have had their process, they've been removed, and then they choose to legally reenter, and they're reinstated and removed again. In that situation, Congress has deemed they've had all the process due, there's no more relief, there's no more reopening, there's no more rootability determinations, there's no more relief determinations. Those take years. This is reinstatement. It's supposed to be a very ministerial proceeding, because they've had their day in court. That's consistent with congressional intent in enacting the statute, which was finality and which was consequence. Consistent with Rouse's skirto, which talks about the rights that you have prior to reinstatement, not being diminished, you're just forfeiting those rights by your decision to legally reenter. You're not being penalized. You were forfeited by your own actions in this case. Counsel, any other questions? No, it appears not. Thank you. I might just leave this up high like this. There's a button. You can lower that if you'd like. Because we can barely see you. Okay. Okay, well, I'd like to just first start off by repeating what Judge Hawkins read from the decision in Morales' skirto. And that's because the government is arguing that Morales' skirto said that they're talking about rights and remedies available prior to reinstatement. And that makes no sense. That's clearly not what the court said. The court was defending the reinstatement process against a constitutional challenge. And in doing that, it had to say, it had to defend it by saying the reason it's okay is because you still have all these rights that you're trying to argue in the reinstatement process. It said the reinstatement process, regardless of what happened in the underlying order, it doesn't offend due process because reinstatement of a prior order does not change the alien's rights or remedies. The only effect of the reinstatement is to cause the removal from the United States. The reinstatement order imposes no civil or criminal penalties, creates no new obstacles. New obstacles. If it's talking about rights before, why would the court say no new obstacles to challenging or attacking the validity of the underlying order? And then it cites the motion to reopen provisions. It says that it doesn't diminish your access to whatever path for lawful entry that you might otherwise be able to take advantage of. It later says if Morales, who challenged the reinstatement process because his underlying order was defective, if he has a legitimate basis for doing so, he will be able to pursue it after he leaves the country. So I don't see where the government can possibly argue that Morales E. Sciarra was talking about rights or remedies prior to reinstatement. It makes no sense. The whole point, the whole discussion, was to defend the reinstatement process. And in doing so... Morales was somebody factually who had been removed and then reentered? Yes. Just like your client? Just like my client. But he was in a worse position because he was still in the reinstatement process. And he was arguing that the reinstatement process and the regulations violated his due process rights because of the defective underlying order. My client is not and has not made any such arguments. He didn't use the reinstatement process. That's our conundrum, is that there was a different situation there that they were addressing and they weren't necessarily addressing the issue we're talking about here, although we have language. Right. But I think it's central to the court's holding in that case as to why this whole process, which the court had previously had concerns about, whether it was even constitutional, to find that, okay, it passes these constitutional questions, the court had to explain what 1231A5 means. And it's limited. It's extremely limited. It only means, and the court said it, that you can't bring these challenges in the reinstatement process. And that's not at all what Mr. Gomez did. And so the government argues he's manufacturing himself. When does the reinstatement process end? So I think I want to just first say that the court doesn't have to decide that in this case because it's clear that it ended in this case. Well, it has to decide it if it's interpreting the statute. Right, I understand. I mean, I think for sure where a person's removal has been executed pursuant to a reinstatement or clearly it's over then. I think it also, there's a good argument that it's over once a person decides not to challenge the reinstatement. And so the government argues that, well, it's just this little period. The officer makes these findings and it's a few days and it's over. Well, that might be true, but if a person files a petition for review of the reinstated order, which the petitioner did in Morales, then you're still in that reinstatement period because you're challenging it. And so it could go on for years. And so what the court was concerned... Let's say that he reenters here, he gets the reinstatement order, and he then is, for whatever reason, they have him detained, but they don't deport him right away. Is there a period between the entry of the order and someone's deportation in which the reinstatement is over and he could then challenge? Well, I think as long as his opportunity  then he could seek to reopen. I mean, I think that the actual reopening bar, it's not only limited to the reinstatement period, but it also is designed to not be able to challenge the underlying order to fight reinstatement. Thank you. The case just argued of Gomez v. Sessions is submitted. Thank you both for your arguments and briefing. Reynolds v. Lewis County is submitted on the brief, so we'll next hear argument in Brown v. Berryhill.
judges: Hawkins, McKeown, Foote